Dear Senator Dirck:
This opinion is in response to the following question:
 Does a day program for head injured persons, sixteen years or older, qualify as a service for persons defined as handicapped in Section 205.968.2 and Section 178.900, and thus as a program qualified to receive funds pursuant to Section 205.968.
As set out in Section 205.968, RSMo Supp. 1984, the governing body of any county or city not within a county may establish individually, or in any combination, sheltered workshops, residence facilities or related services for the care or employment, or both of handicapped persons. Subsection 2 of Section 205.968, RSMo Supp. 1984, states in part:
 2. The facilities or services may only be provided for those persons defined as handicapped persons in section 178.900, RSMo, and those persons defined as handicapped persons in this section whether or not employed at the facility or in the community, and for persons who are handicapped due to developmental disability. . . .
Whether a day program for head injured persons qualifies to receive funds pursuant to Section 205.968, is dependent upon whether individuals with head injury enrolled in the program meet one of the three definitions of handicapped person contained in Section 205.968.2.
The first definition of a handicapped person eligible for facilities or services is based on Section 178.900, RSMo 1978, which defines handicapped persons as follows:
* * *
 (2) "Handicapped persons", a lower range educable or upper range trainable mentally retarded or other handicapped person sixteen years of age or over who has had school training and has a productive work capacity in a sheltered environment adapted to the abilities of the mentally retarded but whose limited capabilities make him nonemployable in competitive business and industry and unsuited for vocational rehabilitation training;
* * *
The second definition of a handicapped person is contained in subsection 3(2) of Section 205.968, RSMo Supp. 1984, which provides as follows:
 3. For the purposes of sections 205.968
to 205.972, the term
* * *
 (2) "Handicapped person" shall mean a person who is lower range educable or upper range trainable mentally retarded or a person who has a developmental disability.
The third definition of a handicapped person eligible for facilities or services is contained in Section 205.968.2, RSMo Supp. 1984, which states in part:
 2. The facilities or services may only be provided . . . and for persons who are handicapped due to developmental disability. . . .
Developmental disability is defined in Section 205.968.3, (1) RSMo Supp. 1984, as follows:
 3. For purposes of sections 205.968
to 205.972, the term
 (1) "Developmental disability" shall mean:
 (a) A disability which is attributable to mental retardation, cerebral palsy, autism, epilepsy, a learning disability related to a brain dysfunction or a similar condition found by comprehensive evaluation to be closely related to such conditions, or to require habilitation similar to that required for mentally retarded persons;
 (b) Which originated before age eighteen; and
 (c) Which can be expected to continue indefinitely;
In House Bill No. 1243, Eighty-Third General Assembly, Second Regular Session, one finds the following definition of "head injury":
* * *
 (2) "Head injury" or "traumatic head injury", a sudden insult or damage to the brain or its coverings not of a degenerative nature. Such insult or damage may produce an altered state of consciousness and may result in a decrease of one or more of the following: mental, cognitive, behavioral or physical functioning resulting in partial or total disability. Cerebral vascular accidents, aneurisms and congenital deficits are specifically excluded from this definition;
* * *
As we understand the facts, a person with head injury has suffered traumatic injury to the brain or its coverings, and one or more of the results may be that the injured person suffers a decrease in mental functioning, cognitive functioning or behavioral functioning. We further understand that the definitions of mental retardation and developmental disability include head injured persons if those persons meet the classification criteria (see Classification in Mental Retardation, American Association on Mental Deficiency, 1983, p. 11, p. 168).
In our opinion, this decrease in functioning could result in the person meeting one of the three definitions of handicapped person contained or referenced in Section 205.968. Whether or not any particular individual meets one of these definitions is a matter for persons trained to assess and diagnose mental retardation, developmental disability, and/or the ability to obtain competitive employment.
However, Section 205.968.2, establishes the right of the county board of directors governing the Section 205.968
facilities and services to impose limitations on individuals to be served or services to be provided, such limitations to be reasonable in light of available funds, needs of the persons and community to be served as assessed by the board, and the appropriateness and efficiency of combining services to persons with various types of handicaps or disabilities. We do not address whether Section 205.968.2 would authorize a county board to refuse funding to an otherwise qualified program serving developmentally disabled or retarded persons solely because the onset of mental retardation or developmental disability in persons served by the program was the result of traumatic brain injury.
It is the opinion of this office that a day program for head injured persons may qualify as a service for persons defined as handicapped in Section 205.968.2 and Section 178.900, and thus a program qualified to receive funds pursuant to Section 205.968, where such head injured persons meet one of the three definitions of handicapped persons as set out in Section205.968.2, and where the county board has not imposed limitations with respect to individuals to be served or services to be provided which would effect such funding.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General